*354 OPINION OF THE COURT
Gerald W. Connolly, J.
Before the court is the application of Airbnb, Inc. (petitioner) for the quashing of a subpoena served in the matter of an investigation by Attorney General Eric T. Schneiderman relating to petitioner’s clients that rent apartments located in New York State via petitioner’s Internet platform.[1] The subpoena commands that, “pursuant to the Executive Law § 63 (12) and § 2302 (a) of the New York Civil Practice Law and Rules,” petitioner produce:
“1. An Excel spreadsheet Identifying all Hosts that rent Accommodation(s) in New York State, including: (a) name, physical and email address, and other contact information; (b) Website user name; (c) address of the Accommodation(s) rented, including unit or apartment number; (d) the dates, duration of guest stay, and the rates charged for the rental of each associated Accommodation; (e) method of payment to Host including account information; and (f) total gross revenue per Host generated for the rental of the Accommodation(s) through Your Website. The Excel spreadsheet should be capable of being organized by gross revenue per Host and per Accommodation.
“2. For each Host identified in response to Request No. 1, Documents sufficient to Identify all tax-related communications Your Website has had with the Host, including tax inquiries or tax document requests whether initiated by the Host or You.”
Petitioner provides an Internet platform connecting individuals who offer accommodations (hosts) to individuals who wish to book accommodations (guests). If the parties agree on the price and terms, they can complete the transaction, including payment, via such platform. Petitioner brings the instant proceeding to quash the subpoena on the grounds, inter alia, that the challenged subpoena is without factual basis, overbroad and unduly burdensome.
Respondent opposes the application and has cross-moved for an order to compel compliance with the subpoena, asserting *355 that the subpoena is within the broad investigatory authority of the New York State Attorney General and was issued in the context of an investigation into potentially illegal activity by petitioner’s hosts in renting their apartments and failing to pay required state and local taxes.
Petitioner’s Claims
Petitioner asserts specifically that the instant subpoena should be quashed as: (i) there is no reasonable, articulable basis to warrant such investigation and the subpoena constitutes an unfounded “fishing expedition”; (ii) any investigation is based upon laws that are unconstitutionally vague; (iii) the subpoena is overbroad and burdensome; and (iv) the subpoena seeks confidential, private information from petitioner’s users.
Standard
The Attorney General has the authority under Executive Law § 63 (12) to investigate allegations of possible violations of the law, and this authority encompasses the ability to serve subpoenas (see e.g. Matter of American Dental Coop, v Attorney-General of State of N.Y., 127 AD2d 274 [1st Dept 1987]). Upon a motion contesting a subpoena, the Attorney General
“need only show that the records and books which he seeks bear a reasonable relation to the subject-matter under investigation and to the public purpose to be achieved. He does not, it is true, have arbitrary and unbridled discretion as to the scope of his investigation, but, unless the subpoena calls for documents which are utterly irrelevant to any proper inquiry or its futility ... to uncover anything legitimate is inevitable or obvious, the courts will be slow to strike it down.” (Matter of La Belle Creole Intl., S.A. v Attorney-General of State of N.Y., 10 NY2d 192, 196 [1961] [citations and internal quotation marks omitted].)
Factual Basis
Petitioner alleges that the Attorney General has no factual basis for the issuance of the subpoena, and is using petitioner as “an arm of its investigatory staff in order to help it determine what the current hotel tax and occupancy laws mean in the context of Airbnb or to determine how to apply the law” (Airbnb mem of law at 6). Petitioner argues, initially, that respondent has failed to articulate any basis for its subpoena and has failed to conduct any investigation to determine wrongdoing by Airbnb or its users.
*356 In opposition to the motion to quash and in support of its cross motion to compel, the Attorney General has submitted, inter alia, the affidavit of Vanessa Ip and the affirmations of Clark E Russell and Randall M. Fox.
The law requires that some factual basis be demonstrated to support a subpoena. In Myerson v Lentini Bros. Moving & Stor. Co. (33 NY2d 250, 256 [1973]), the Court of Appeals stated, in pertinent part, that the agency asserting its subpoena power must show “some basis for inquisitorial action” (citing Matter of A’Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers’ Assn., 23 NY2d 916 [1969]), though this showing does not need to reach a level of probable cause. Myerson held, in a review of subpoenas issued by the Commissioner of the Department of Consumer Affairs of New York City, not only that probable cause was not required, but also that the required level does not need to constitute a “strong and probative basis for investigation” (id. at 258). Myerson weighed the scope and basis for the issuance of the subpoena against the factual predicate for the investigation “lest the powers of investigation, especially in local agencies, become potentially instruments of abuse and harassment” (id.).
Multiple Dwelling Law
The Attorney General asserts that Multiple Dwelling Law, article 1, § 4 (8) (a) provides that a class A dwelling is “a multiple dwelling that is occupied for permanent residence purposes,” and includes in such class, inter alia, tenements, apartment houses, studio apartments, duplex apartments, and kitchenette apartments. Such provision mandates that “[a] class A multiple dwelling shall only be used for permanent residence purposes” and provides that
“[f]or the purposes of this definition, ‘permanent residence purposes’ shall consist of occupancy of a dwelling unit by the same natural person or family for thirty consecutive days or more and a person or family so occupying a dwelling unit shall be referred to herein as the permanent occupants of such dwelling unit.” (Multiple Dwelling Law § 4 [8] [a].)
Multiple Dwelling Law § 304 provides that any violation of the Multiple Dwelling Law constitutes a misdemeanor.
Ms. Ip has averred that she is an investigator in the Internet Bureau of the New York State Attorney General’s Office and “[s]ince Spring 2013” has conducted searches for New York City-based rentals on petitioner’s website for “December 2 *357 through December 7, 2013 for one guest” and for “[Listings where you have the entire place to yourself’ (Ip aff ¶ 9). She avers that the website returned “1000+Rentals - New York.” Respondent argues that such Internet investigation demonstrates that violations are occurring through such listings where petitioner’s hosts are renting their class A multiple dwelling residences out to a guest(s) for periods less than 30 days while not also residing in such residence, as the Multiple Dwelling Law requires that a class A multiple dwelling residence be used for permanent residence purposes only and that such purposes require occupancy of a dwelling unit by the same person or family for 30 consecutive days or more.
Tax Provisions
Respondent asserts that “[i]n New York City, hotel rooms are subject to a 14.75% tax” which is comprised of the New York City hotel room occupancy tax (HOT), the New York City sales tax and the New York State sales tax (respondent’s mem of law at 12). Tax Law § 1101 (c) (1) defines a hotel as “[a] building or portion of it which is regularly used and kept open as such for the lodging of guests.” Respondent has submitted an article wherein petitioner’s co-founder asserted that “Airbnb hosts in NYC make $21,000 a year on average, and some even up to $100,000 a year” (Ip aff, exhibit A). Respondent also asserts that the New York City Administrative Code provides that an “operator” is anyone operating a hotel in the City of New York and that such person must collect the HOT except that a facility will not be considered a hotel with respect to such tax where rooms or apartments are rented on fewer than three occasions or for not more than 14 days in the aggregate during any four consecutive quarters or any 12-month period ending on the last day of February (see NYC Dept of Fin mem of Aug. 23, 2011).
Respondent has submitted the affirmation of Randall M. Fox, Esq., the Bureau Chief of the Taxpayer Protection Bureau, who affirms that any individual who is required to pay the HOT must file with the New York City Department of Finance a certificate of registration for each location. He affirms that the New York City Department of Finance provided data for 2012 concerning the number of registrations and persons who made filings for the HOT and that the figures “suggest that the number of individuals who are renting their apartments for short-term rentals make up a small portion of the people or entities that have either filed Certificates of Registration, paid HOT, or are otherwise referenced in the Department of *358 Finance’s data.” (Fox affirmation ¶ 8.) Respondent asserts that “even the most cursory review of the certificates of registration reveals that the vast majority of the over 15,000 AirBnB Hosts in New York City are not paying HOT.” The record before the court indicates that there are hosts regularly using their apartments to provide lodging to guests who may not be complying with the state and local tax registration and/or collection requirements.
Based upon the facts as alleged in the record before the court, petitioner’s assertions that a factual predicate has not been established are without merit as there is evidence that a substantial number of hosts may be in violation of the Multiple Dwelling Law and/or New York State and/or New York City tax provisions based upon a plain reading of such provisions and, inter alia, the searches respondent performed and other records submitted by respondent to the court demonstrating that certain of petitioner’s hosts are regularly using their apartments to provide lodging to guests.[2]
Breadth of the Subpoena
A general factual predicate for the issuance of the subpoena has been established. The subpoena, however, broadly requests information for “all Hosts that rent Accommodation(s) in New York State.” The Multiple Dwelling Law provides that its application is to “cities with a population of three hundred twenty-five thousand or more” (though other cities, towns or villages may adopt the provisions of the law) (Multiple Dwelling Law § 3 [1]). The subpoena, however, is not limited to New York City hosts or those who reside in cities, towns or villages that have adopted the Multiple Dwelling Law, nor is it limited to rentals of less than 30 days.
Further, with respect to the HOT, such subpoena is again not limited to New York City hosts, nor does it take into account the exceptions that respondent acknowledges exist concerning, inter alia, the tax laws at issue herein, i.e., the exception for “rentals for less than 14 days, or for fewer than three occasions during the year (for any number of total days)” (see respondent’s mem in opp at 13). Finally, to the extent the New York State *359 Tax Law applies with respect specifically to sales taxes that may be due and owing by New York State hosts, such tax would be due where a building is considered a “hotel” and is “regularly used and kept open as such for the lodging of guests” (Tax Law § 1101 [c] [1]). The subpoena at issue, however, does not provide any limitation with respect to petitioner’s hosts (i.e., exempting such hosts that have used petitioner’s Internet platform only once, or only for very limited periods).
While petitioner bears the burden of demonstrating that the subpoena is overbroad, as petitioner argues, a plain reading of the subpoena in light of Multiple Dwelling Law § 4 and the tax provisions and materials at issue meets such burden. Based upon the foregoing, the subpoena at issue, as drafted, seeks materials that are irrelevant to the inquiry at hand and accordingly, must be quashed (see Matter of D’Alimonte v Kuriansky, 144 AD2d 737, 739 [3d Dept 1988] [“We cannot countenance a subpoena which seeks materials that clearly are irrelevant to the matter at hand”]).
Unduly Burdensome
Petitioner has failed to demonstrate that the subpoena is unduly burdensome. Respondent seeks, inter alia, the host’s name, address of accommodation, dates of stay, rates, method of payment and total revenue from the rental. Petitioner, an Internet platform with, per the amended petition (¶ 12), hundreds of thousands of separate (presumably) electronic records, has failed to establish, other than via conclusory assertions, that such information is not collected by petitioner nor readily accessible by petitioner. As to the tax communications respondent is seeking, respondent notes that it only seeks what petitioner has advised its hosts. Petitioner’s conclusory assertions that it will be difficult to provide, inter alia, the names, addresses and contact information of its hosts and the addresses of the accommodations being rented, as well as tax communications, if any, that it has provided its hosts, is insufficient to demonstrate that the subpoena is unduly burdensome.[3]
Unconstitutional Vagueness
Petitioner further asserts that respondent “cannot use its subpoena power as a tool for enforcing unconstitutionally vague laws against [Airbnb hosts]” (petitioner’s mem of law at 7). *360 Respondent asserts that the investigation at issue is of Airbnb’s hosts for potential violations of zoning and tax laws, and accordingly, petitioner lacks standing to argue such statutes’ application to its hosts. Further, respondent asserts that such constitutional challenge is not ripe as there is no actual controversy between the hosts and respondent at this time.
In determining whether a matter is ripe for judicial review,
“[f]irst, the action must impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process. In other words, a pragmatic evaluation [must be made] of whether the decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury. Further, there must be a finding that the apparent harm inflicted by the action may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party” (Matter of Gordon v Rush, 100 NY2d 236, 242 [2003] [citations and internal quotation marks omitted]).
“Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis” (Arriaga v Mukasey, 521 F3d 219, 223 [2d Cir 2008], quoting Maynard v Cartwright, 486 US 356, 361 [1988]).
Based upon the record, any arguments concerning the constitutional vagueness of statutes that respondent may, at some point in the future, attempt to apply to petitioner’s hosts, are not ripe for review. Respondent has not filed any action or attempted to enforce against any individuals or entities the laws at issue and accordingly, such challenges are for such time.
Confidentiality
Petitioner also contends that the subpoena seeks “confidential, private information” from petitioner’s users
“including the Host’s: (a) name, physical and email address, and other contact information; (b) Website user name; (c) address of the Accommodation(s) rented, including unit or apartment number; (d) the dates, duration of guest stay, and the rates charged for the rental of each associated Accommodation; (e) method of payment to Host including account information; and (f) total gross revenue per Host generated for the rental of each Accommodation” as well as “tax-related communications” (petitioner’s mem *361 of law at 17).
Initially, petitioner has failed to demonstrate that the requested information is confidential, particularly where petitioner’s privacy policy provides that petitioner will disclose any information in its sole discretion that it believes is necessary to respond to, inter alia, subpoenas. As to such tax-related communications, petitioner has failed to demonstrate adequate legal authority to preclude respondent’s request for tax-related communications petitioner has had with its hosts, including tax inquiries or tax document requests. To the extent the subpoena requests tax inquiries or tax document requests initiated by petitioner or its hosts, petitioner has failed to demonstrate that such subpoena is requesting the disclosure of a host’s tax returns or that petitioner is in possession of such information.
Otherwise, the court has reviewed the parties’ remaining arguments and finds them either unpersuasive or unnecessary to consider given the court’s determination.
Based on the foregoing, it is hereby ordered that the court grants petitioner’s instant application to quash the subpoena as overbroad and denies respondent’s cross motion to compel.

. The court held oral argument on April 22, 2014. By letter decision and order of December 5, 2013, the court granted (i) the Electronic Frontier Foundation and the Center for Democracy and Technology and (ii) The Internet Association leave to file amicus curiae briefs.

. Petitioner has not demonstrated that Tax Law § 1141 (a) precludes the issuance of the subpoena as such provision, as noted by petitioner, relates to where the respondent is bringing an action to enforce the payment of taxes.
In light of such submitted proof of a factual predicate for respondent’s investigation into potentially extensive violations of both the Multiple Dwelling Law and the Tax Law, the court rejects petitioner’s claim that the subpoena constitutes an unfounded fishing expedition.

. In particular, the court notes the lack of an affidavit from a representative of petitioner providing specific information concerning the alleged burden imposed in gathering the information responsive to the subpoena.